## UNITED STATES DISTRICT COURT OF FEDERAL CLAIMS

JASON LAMBRO, individually and on
behalf of similarly situated individuals,

    Plaintiff,

v.

THE UNITED STATES OF AMERICA,

    Defendant.

Civil Action No. 1:21-cv-01447
Hon. Zachary N. Somers

## SECOND AMENDED COMPLAINT

Plaintiff Jason Lambro ("Plaintiff"), individually and on behalf of similarly situated individuals ("Class Members"), by and through undersigned counsel, brings this action under the Fair Labor Standards Act ("FLSA"), 29 USC § 201 *et seq.* against Defendant, The United States ("Defendant"), for acts by the Voice of America ("VoA") an affiliate of the US Agency for Global Media ("USAGM"), formally known as, Broadcasting Board of Governors.

### NATURE OF THE ACTION

1.    This class action arises from VoA's willful misclassification of Plaintiff and the Class Members as independent contractors rather than employees. VoA wrongfully lured Plaintiff and the Class Members into purchase order agreements, explicitly limiting the parties' relationship as non-personal service contractors or independent contractors. Contrary to the purchase order agreement's terms, Plaintiff and the Class Members provided USAGM personal services, as defined in 48 CFR § 37.104 and applicable FLSA provisions, creating an employee-employer relationship between the parties and entitling Plaintiff and the Class Members to benefits available to federal employees.

1

2. At all times during the allegations in this Complaint, VoA was engaged in the commercial enterprise of international news broadcasting.

3. USAGM's willful misclassification is exemplified in its response to the Inspector General of the Department of State ("OIG") June 2014 Audit of the Broadcasting Board of Governors Administration and Oversight of Acquisition Functions. In that audit, the OIG determined that the USAGM misclassified Class Members in knowing violation of the law. Even after the OIG's findings, USAGM refused to rectify its wrongs and continued to use purchase orders and vendor agreements to obtain personal services via contract until July or August of 2020.

4. USAGM's illegal and deliberate misclassification of Plaintif and the Class Members prevented Plaintiff and the Class Members from receiving employee benefits, tenure, and additional compensation for overtime hours as allowed by the FLSA.

5. Defendant's illegal misclassification also deprived Plaintiffs of their rights of collective bargaining under the Federal Service Labor-Management Relations Statute. Moreover, any communications between independent contractors related to the prices they are charging the government for their services would have amounted to collusion, which is strictly precluded by anti-trust laws and the Sherman Act (15 U.S.C. § 1).

6. Defendant could have, at all times relevant to this complaint, competed the requirements of the individual contracts relevant to this complaint, so that the employee of the awardees could collectively bargain and enjoy the benefits of the Services Contract Act (SCA).

7. Even if this Court ignores the OIG's application of 48 CFR § 37.104 to determine an employer-employee relationship, such a relationship would exist under this Court's adoption of the "Economic Realities" test and those cases involving FLSA claims.

8. As a result of USAGM's actions, Plaintiff and the Class Members are entitled to:

(1) unpaid wages for work performed for which they did not receive any compensation, (2) overtime work for which they did not receive any overtime premium pay as required by law, (3) liquidated damages under the FLSA, and (4) any other damages the Court determines are due and owing based on the benefit conferred by Plaintiff and the Class Members on Defendant.

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction over this matter pursuant to 29 USC § 216(b), which authorizes actions by private parties to recover damages for a violation of the FLSA's wage and hour provisions. Section 29 USC § 216(b) further provides that suit under the FLSA "may be maintained against any employer … in any Federal or State court of competent jurisdiction."

10. This Court has federal question jurisdiction over the action pursuant to 28 USC § 1331 as Plaintiff's claims arise under the FLSA.

11. Defendant has willingly acquiesced to this Court's jurisdiction by requesting and obtaining transfer of Plaintiff's claims from the United States District Court for the District of Columbia. (*See* Exhibit A)

12. Venue in this District is proper pursuant to 28 USC §§ 1391(b) and (c) because Defendant conducts business within the District and a substantial part of the events and/or omissions giving rise to this claim occurred in this District.

13. This Court also has jurisdiction pursuant to the U.S. Court of Appeals for Federal Claims ruling in *Abbey v. U.S.*, 745 F.3d 1363 (Fed. Cir. 2014) and the Tucker Act 28 U.S.C. § 1491.

**PARTIES**

14. Defendant operates USAGM, an independent governmental agency created to provide international broadcasting. USAGM is comprised of five media organizations, including the Voice of America ("VoA"). USAGM is federally mandated to support daily operations and provide transmission and distribution services and technical support for the media organizations under its umbrella. Each organization within USAGM has multiple departments, all with separate leadership and workforce.

15. USAGM acts as a corporate enterprise, with a Chief Executive Officer overseeing USAGM's operations' day-to-day management.

16. The Mission of USAGM is to inform, engage, and connect people around the world in support of freedom and democracy. USAGM completes this mission by producing and disseminating news commentary to its viewers in the United States and throughout the world.

17. Plaintiff Jason Lambro is an adult individual domiciled in Nottingham, Maryland. Plaintiff provides Studio Technician services at VoA's headquarters in Washington, DC, under a purchase order agreement with the VoA. (See Exhibit B).

18. Plaintiff brings this action on behalf of himself and other similarly situated employees under 29 USC § 216(b). Plaintiff and the similarly situated employees are individuals who were, or are, misclassified by USAGM as independent contractors.

19. At all relevant times, Plaintiff and the Class Members were or are "employees" of USAGM as defined by the FSLA, 29 USC § 203(e)(1).

20. At all relevant times, Plaintiff and the Class Members were or are "employees," because they met the "economic realities" test outlined by the Department of Labor and adopted by courts. *See, e.g., Goldberg v. Whitaker House Co-op., Inc.*, 366 U.S. 28, 81 S. Ct. 933, 6 L. Ed.

2d 100 (1961).

21.     At all relevant times, USAGM, including VoA, is an "employer" as defined by FLSA, 29 U.S.C. §§ 203(d) & (x).

22.     The putative Class is or has been "engaged in commerce" as required by the FLSA, 29 USC §§ 206-207.

## FACTUAL ALLEGATIONS

**Plaintiff's 2002-2017 Contract with the USAGM**

23.     VoA is an international multimedia broadcaster with service in more than 40 languages with the sole purpose of providing news, information, and cultural programming via internet, mobile and social media, radio, and television.

24.     In 2002, Plaintiff began working with the VoA pursuant to a purchase order agreement as a Studio Technician within VoA's Televisions Operation/TV Studio Service department.

25.     Plaintiff's purchase order agreement with the VoA has been in force from 2002 to approximately July 2020 and has had no substantive changes since Plaintiff began working for the VoA.[1] Moreover, the purchase order agreement contained the following terms:

- Article V – Submission of Deliverables: Plaintiff "shall submit work materials at least one hour prior to when the material is intended for use. (For example, material to be used at the 7:00 am broadcast must be submitted to the [Contracting Officer Representative] COR by 6:00 am)."

- Article X – Subcontracting: "None of the work to be performed under this [purchase agreement] shall be subcontracted, and no obligation or duty arising out of the [purchase agreement] may be transferred or assigned" without the approval of the USAGM, Contracting Officer, and other higher-ups with the governmental organization.

---

[1] The only changes to the purchase agreement have been increases to Plaintiff's hourly rate.

- Article XII – Acceptance of Agreement: Plaintiff "agrees that no employer-employee relationship exists" between Defendant and Plaintiff.

26. Plaintiff's employment package included a Statement of Work outlining Plaintiff's duties and responsibilities as a Studio Technician for VoA. The Statement of Work mandated the following:

- Plaintiff "shall perform the following work at . . . Voice of America, Washington DC Headquarters Building . . . unless otherwise mutually agreed to by the Contracting Officer."

- Plaintiff "shall provide general studio operation service utilizing Government equipment on-site at the office of . . . [VoA's] facilities." Plaintiff's responsibilities as a studio technician "include the operation of studio audio equipment, video device playback equipment, and the ability to perform the duties associated with a Studio Technician I.

27. Plaintiff's first purchase order agreement was initially for a year with an option allowing VoA to extend the contract term for a year at a time. In Plaintiff's case, his contract was renewed 17 times, in one-year increments, for the past seventeen years. The substantive terms in Plaintiff's original purchase order agreement did not change throughout these seventeen years.[2]

28. The express terms in the purchase order agreement provide ostensible independence to Plaintiff in determining the manner and means of work. However, in practice, Defendant significantly controlled and continues to control the timing and management of Plaintiff's work. For example, Plaintiff contracted with VoA to work in its Televisions Operation/TV Studio Service department as a Studio Technician II. Nevertheless, VoA supervisors required Plaintiff to work in the Audio-Mix and Language department to complete audio-mixing tasks not required under his purchase order agreement or the statement of work for a Studio Technician II.

---

[2] Plaintiff received nominal pay increases during his tenure at the VoA.

29. Additionally, on multiple occasions, Plaintiff was told when to arrive at work. Once at work, Plaintiff was told what audio systems he would operate, including what commands he should input into the audio/visual systems. Plaintiff at all times was required to abide by the commands given, whether or not he agreed with those commands based upon his professional opinion.

30. Furthermore, at the time of signing his original purchase order and at all times thereafter, Plaintiff was told to follow the directions of the on-site supervisor and/or department manager.

31. At all times, Plaintiff worked next to full-time, GS employees who completed the same work as Plaintiff. Such as imputing commands into the audio/visual systems during ongoing television programs. Furthermore, all of Plaintiff's actions were completed to meet the mission of USAGM, 22 USC 1461, and the VoA, which provides:

> (1) VOA will serve as a consistently reliable and authoritative source of news. VOA news will be accurate, objective, and comprehensive. (2) VOA will represent America, not any single segment of American society, and will therefore present a balanced and comprehensive projection of significant American thought and institutions. (3) VOA will present the policies of the United States clearly and effectively, and will also present responsible discussions and opinion on these policies. (Public Law 94-350)

32. It was not uncommon for VoA to demand its non-personal service providers, like Plaintiff, to engage in work not required under their contractual agreement. 'Non-personal service' providers or purchase order vendors who failed to acquiesce to their supervisor's demands, such as transition over to a new department, were retaliated against and eventually fired.

33. Plaintiff was consistently directed to complete these non-contracted for tasks, such as audio-mixing/video editing and installations, under the direction of Defendant's full-time managers or risk being constructively fired, under the guise of a "termination for default."

34. VoA, by forcing Plaintiff and the Class Members to work and complete tasks not included under the terms of their explicit contracts, took benefits from Plaintiff and other contractors without properly compensating Plaintiff and the Class Members for their work.

35. Furthermore, while working at VoA, Plaintiff was never required to provide any equipment to complete his tasks because VoA provided all equipment needed.

36. At all times, when Plaintiff discussed the discrepancies between the services provided per his contract and the additional services requested by Defendant, Plaintiff was directed to discuss those issues with a VoA supervisor and not the contract officer or contract officer's representative.

37. Plaintiff and the Class Members were also unable to choose their schedules or the shows they wanted to work for on any particular day. Plaintiff and the Class Members were also unaware of their specific tasks on a given day. VoA even determined what days and hours Plaintiff and the Class Members worked. Plaintiff and the Class Members were required to come into work and check a schedule board to obtain assignments. This board informed Plaintiff and the Class Members which television shows they had to work that day and how long they had to work. VoA also required Plaintiff and the Class Members to remain on-call at all times if the agency needed them at the office.

38. While employed with VoA, Plaintiff worked more than 40 hours per week. Yet, he did not receive an overtime premium or any benefits VoA's full-time employees typically received. At all times at VoA, Plaintiff performed assignments for the benefit of the Defendant and per VoA charter, including but not limited to, engaging in work necessary to ensure the successful production and broadcasting of various VoA video and radio programs.

39. During the aforementioned overtime periods, Plaintiff was required to complete

audio-mixing and video editing assignments neither contemplated by his contract. Plaintiff was also required to work in departments outside of the department mentioned explicitly in his contract.

40. Throughout Plaintiff's relationship with Defendant and due to the Defendant's misclassification, Plaintiff and the Class Members were unable to obtain the following benefits of full employment:

- paid sick leave
- paid vacation time
- shared responsibility for tax withholdings
- join a labor union
- tenure
- health and short term disability insurance
- joint contributions to retirement plans

41. Furthermore, Plaintiff at all times, while employed by VoA, Plaintiff was treated as an essential employee. Upon information and belief, he was required to work, without pay, during previous government shutdowns.

**Plaintiff's 2018-2020 Contract with the USAGM**

42. In early 2018, Plaintiff created Wayne Industries, LLC, to contract with VoA and take advantage of the available corporate tax breaks. VoA agreed to contract with Plaintiff's company with contractual terms virtually identical to the original purchase order agreement entered between VoA and Plaintiff.

43. Several Class Members also created separate legal entities, like Plaintiff, to take advantage of corporate tax breaks. And, like Plaintiff, VoA agreed to contract with these legal entities.

44.	Although VoA contracted with Wayne Industries, LLC, Plaintiff was still constructively barred from hiring workers to fulfill Plaintiff's obligations under the contract without seeking approval from a significant number of USAGM higher-ups. Therefore, although the VoA now contracted with an LLC, the contracting officers expected Plaintiff to show up and work all shifts assigned.

45.	During the contract with Wayne Industries, LLC, VoA never treated Plaintiff's company as a separate entity. This assertion is bolstered by VoA's act of listing Plaintiff's name on the scheduling board and not Wayne Industries, LLC.

46.	Because VoA treated Wayne Industries, LLC, as an extension of Plaintiff, Plaintiff could not enjoy the benefits usually afforded a business owner. These benefits Defendant deprived Plaintiff include hiring additional employees to work on a project, taking time off whenever he chose, and making an employee stand in his stead at work.

47.	Throughout this period, Plaintiff worked more than 40 hours per week. Yet, he did not receive an overtime premium or any benefits VoA's full-time employees typically received.

48.	Defendant at all times intended to benefit Plaintiff as a third-party beneficiary of the contract with Wayne Enterprises, LLC. Evidence of Plaintiff being a third-party beneficiary is shown in the contracts signed by Plaintiff with Defendant following the creation of Wayne Enterprises, LLC. On information and belief, several documents were signed by Plaintiff in his own name throughout the pendency of his contract after he created Wayne Industries, LLC.

49.	At all times, while Plaintiff operated under Wayne Industries, LLC, the VoA intended to treat Plaintiff's company as an extension of Plaintiff and treated both Plaintiff and his company accordingly. Furthermore, VoA, by contracting with Wayne Industries, LLC, intended to confer a benefit on Plaintiff directly, allowing Plaintiff to receive favorable tax

benefits.

50. VoA also received a benefit in ensuring that Plaintiff would be the sole contractor working at VoA under the Wayne Industries, LLC, name.

51. Furthermore, during this period, the contracting officers and their representatives intended to benefit Plaintiff when agreeing to a contract with Wayne Industries, LLC. As proof of this intent, Defendant did the following:

- Filed and approved IPP documents listing Plaintiff's name alone.

- All discussions regarding raises included Plaintiff's name alone and did not include the title or use of Wayne Industries, LLC.

- On information and belief, almost all contract discussions following the creation of Wayne Industries, LLC, were sent to Plaintiff's personal email address and all communications between Plaintiff and the contracting officer discussed potential opportunities for Plaintiff, not Wayne Industries, LLC.

- On information and belief, Plaintiff's reviews listed Plaintiff's name and not the name of Wayne Industries, LLC.

52. Furthermore, during this time, Plaintiff was treated as an essential personnel.

**USAGM's Willfully Misclassified Plaintiff and the Class Members**

53. VoA willfully misclassified Plaintiff and the Class Members as independent contractors to minimize costs and avoid violating its congressional hiring authority. In further support of VoA's willfulness, Plaintiff cites the OIG's June 2014 Audit of USAGM. The OIG determined that USAGM entered into contracts with people like Plaintiff, labeled for non-personal service, to avoid violations under the Federal Acquisitions Regulation "FAR." The OIG determined that the aforementioned contracts were, in fact, for personal services, as defined in 48

CFR § 37.104(d),[3] and created an employee-employer relationship.

54. In response to the OIG's audit, USAGM admitted that the contracts issued were personal services contracts creating an employee-employer relationship with the government as defined by 48 CFR § 37.104. This admission occurred in 2014.

55. The OIG reviewed many of the agreements, similar to Plaintiff's, between USAGM and its contractors and determined that relationships of those contracts were as follows:

- The contractors worked on site;
- All tools relevant to the contractors work were provided by the government;
- All efforts by the contractors were completed to serve integral efforts of USAGM's missions;
- Contractors efforts and services were identical or similar to USAGM's full-time employees;
- Contractors' services were needed for an extended period of time; and
- Government employees supervised contractors' work.

56. Within the same report, the OIG found that USAGM personnel could not

---

[3] 48 C.F.R. § 37.104(d), mimics in some way the Economic Realities test used by courts in private employment transactions and identifies six factors for assessing whether a contractor isproviding personal service:
1. Performance on site;
2. Principal tools and equipment furnished by the government;
3. Services that are applied directly to the integral effort of agencies . . . in furtherance of assigned function or mission
4. Services that are comparable to or that meet needs comparable to those performed in thesame or similar agencies using civil service personnel
5. A reasonable expected need for the type of service in excess of one year; and
6. An inherent nature of the service, or the manner in which it is provided, that reasonably requires direct or indirect government direction or supervision of contractors in order to:adequately protect the Government's interest. . . .

understand the difference between personal or non-personal services contractors and full-time employees, because USAGM personnel were not taught the difference between the various personnel types.

57. Yet, in the face of this investigation, Defendant continued to hire Plaintiff and the Class Members as purchase order vendors or non-personal service contractors when advised that such a decision was improper.

58. Even after this admission, USAGM failed to properly convert Plaintiff's and the Class Members' contracts into personal service contracts and award them FLSA benefits.

## **CLASS ALLEGATIONS**

59. Plaintiff reasserts and re-alleges the allegations set forth above.

60. Plaintiff files this Complaint on behalf of himself and the Class Members.

61. The Class consists of all persons who provided USAGM services under a contractual arrangement other than full-time employment.

62. The Class is limited to individuals who could obtain redress under the applicable two-year statute of limitations for an ordinary violation of the FLSA and a three-year statute of limitations for a willful violation of the FLSA.

63. Presently, the exact number of those within the Class has not been obtained but can be determined through discovery proceedings. However, the number of individuals in the Class is believed to be greater than 100 individuals. This value is based on the number of individuals who have provided USAGM personal services for the past three years.

64. Given the number of potential Class Members, joinder is impractical.

65. This Complaint involves common questions of law and fact, including:
- Whether Plaintiff and the Class Members provided USAGM personal services

- as provided under 48 CFR 37.104, thus creating an employer-employee relationship;

- Alternatively, whether Plaintiff and the Class Members were employees of USAGM pursuant to the Economic Realities test;

- Whether USAGM misclassified Plaintiff and the Class Members as independent contractors and whether USAGM's misclassification was willful or intentional; and

- Whether Plaintiff and the Class Members are entitled to unpaid overtime compensation and liquidated damages under the FLSA.

- Whether Plaintiff and the Class Members contracts were void or valid.

- Whether Defendant breached its agreements to Plaintiff and Class Members.

66. The named Plaintiff will adequately and fairly protect the interest of the Class.

67. Counsel from the undersigned firm will represent the Class. The firm has successfully litigated complex actions and will adequately represent the Class Members.

68. Defendant's actions, through the USAGM, have affected the entire Class, making global relief for the Class appropriate. Common questions of law and fact predominate over individual questions.

## CLAIM FOR RELIEF

### Count I
### (Violation of the FLSA's Misclassification Provisions)

69. Plaintiff reasserts and re-alleges the allegations set forth above.

70. At all times material herein, Plaintiff and the Class Members have been entitled to the rights, protections, and benefits provided under the FLSA, 29 USC §§ 201, et seq.

71. The FLSA regulates, among other things, the payment of overtime pay by

employers whose employees are engaged in interstate commerce, or engaged in the production of goods for commerce, or employed in an enterprise engaged in commerce or in the production of goods for commerce. *See* 29 USC § 207(a)(1).

72. Defendant violated the FLSA by misclassifying employees, specifically Plaintiff and other similarly situated individuals.

73. It is well established that a worker agreeing to act as an independent contractor is insufficient to avoid the employee-employer analysis under the FLSA. *See Corp. Exp. Delivery Sys. V. NLRB*, 292 F.3d 777 (D.C. Cir. 2002) (affirming the decision that although workers were described in their contract as independent contractors, they were treated as employees). Simply stated, contractual terms alone do not transmute the nature of an employment contract into one that is favorable to the employer under the FLSA.

74. In determining the existence of an employee-employer relationship, the Wage and Hour Division of the Department of Labor, derived from Supreme Court precedent, codified the Economic Realities test. The Economic Realities test factors are:

(1) The nature and degree of the potential employer's control

(2) The permanency of the worker's relationship with the potential employer

(3) The amount of the worker's investment in facilities, equipment, or helpers

(4) The amount of skill, initiative, judgment, or foresight required for the worker's services

(5) The worker's opportunities for profit or loss

(6) The extent of integration of the worker's service into potential employer's business.

75. The Economic Realities test used by the Wage and Hour Division of the Department of Labor was further echoed in *Escamilla v. Nuyen et al.*, 227 F. Supp.3d 37 (DDC 2017). In *Escamilla,* the Court also stated that none of the factors are dispositive and the Court

should look at the totality of the circumstances and evidence. *Id.* (citing *Morrison v. Int'l Programs Consortium, Inc.*, 253 F.3d 5, 10 (D.C. Cir. 2001)).

76. Based on the facts provided, Plaintiff and the Class Members were employees instead of independent contractors.

77. VoA exercised significant control over Plaintiff and the Class Members to the extent that VoA supervisors chose Plaintiff and the Class Members schedules and required Plaintiff and the Class Members to be on-call at all times. Moreover, Plaintiff and the Class Members were notable to control what shows they worked on and when they worked. In Plaintiff's case, VoA required Plaintiff to complete tasks that were not required under his contract. Plaintiff was commanded by VoA employees on how and which inputs to use while operating the audio/visual systems to which Plaintiff was required to comply with, even against Plaintiff's professional judgment. Furthermore, VoA provided all of the equipment Plaintiff and the Class Members needed to complete their jobs.

78. VoA also prevented Plaintiff and the Class Members from profiting from their investment in their respective businesses. Plaintiff was constructively unable to hire employees to fill in for his duties because of the onerous procedure for subcontractor approval. *Compare with FedEx Home Delivery v. NLRB,* 563 F.3d 492, 499 (D.C. Cir. 2009) (Court determined that workers were independent contractors because workers could hire another individual to work in their stead and did not have to tell FedEx, among other reasons).

79. VoA's relationship with the Plaintiff and the Class Members was permanent in nature. Plaintiff and the Class Members signed purchase order agreements that gave VoA a one-year renewal option, and VoA exercised that option. In Plaintiff's case, VoA renewed his purchase order agreement for 19 consecutive years, with no significant substantive changes to Plaintiff's

contractual obligations.

80. Finally, Plaintiff's and the Class Members' work was integral to the operation of VoA and thereby the USAGM. This is exemplified by the sheer number of purchase order agreements USAGM entered and the limited number of full-time employees on staff. Further, without Plaintiff and the Class Members, the USAGM's staff would be significantly reduced.

81. Furthermore, given USAGM's misclassification of Plaintiff, neither Plaintiff or the class members were allowed to unionize or seek collective bargaining, pursuant to Title VII of the Civil Service Reform Act of 1978 (also known as the Federal Service Labor-Management Relations Statute). On information and belief, Defendant's awareness of Plaintiff's and the Class Members' inability to unionize or work together as a unit, less they risk allegations of collusion, led Defendant to take advantage of Plaintiff's and the Class Members' inability to contest their treatment as a unit.

82. Based on the foregoing, Plaintiff and the Class Members were employees of the USAGM and are entitled to overtime pay, liquidated damages, any other relief provided by the FLSA, and any other relief the Court deems reasonable.

**Count II**
**(Willful violation of the FLSA' Misclassification Provisions)**

83. Plaintiff reasserts and re-alleges the allegations set forth above.

84. A "willful violation" of the FLSA will expand the statute of limitations from two years to three. *Escamilla*, 227 F. Supp. 3d at 52.

85. A willful violation is one where "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *Id.* Plaintiff has sufficiently alleged a willful violation in this case.

86. USAGM was aware, at minimum, in June 2014 that the purchase order agreements

it entered into with Plaintiff and the Class Members created an employee-employer relationship whenthe OIG audit explicitly told it as much. Yet, USAGM did nothing to convert Plaintiff's or the Class Member's independent contracting status to full-time employment. Nor did USAGM provide Plaintiff or the Class Members with the benefits required under the FLSA.

87. USAGM was aware of its violation of several federal employment statutes andits refusal to rectify its failings for six years is a testament to its apparent disregard for the FLSA.

88. Based on the foregoing, Plaintiff and the Class Members are entitled to overtime pay, liquidated damages, and any other relief provided by the FLSA for the past three years.

## Count III
### (Declaratory Judgment)

89. Plaintiff reasserts and re-alleges the allegations set forth above.

90. Declaratory judgment jurisdiction requires a definite and concrete dispute, touching the legal relation of the parties having adverse legal interests.

91. Here, Plaintiff and the Class Member seek a declaration that at all times while working for Defendant, they were improperly misclassified and should have been classified as employees instead of independent contractors, pursuant to the FLSA.

92. Defendant violated the FLSA by misclassifying employees, specifically Plaintiff and other similarly situated individuals.

93. It is well established that a worker agreeing to act as an independent contractor is insufficient to avoid the employee-employer analysis under the FLSA. *See Corp. Exp. Delivery Sys. V. NLRB*, 292 F.3d 777 (D.C. Cir. 2002) (affirming the decision that although workers were described in their contract as independent contractors, they were treated as employees). Simply stated, contractual terms alone do not transmute the nature of an employment contract into one that is favorable to the employer under the FLSA.

94. Pursuant to the Economic Realities Test, Plaintiff and the Class Members were employees under the FLSA.

95. Based on the foregoing Plaintiff and the Class Members are entitled to a declaratory judgment that, irrespective of their contracts, they were employees under the FLSA.

## **REQUEST FOR RELIEF**

Plaintiff respectfully requests relief as follows:

A. For an award of liquidated damages and prejudgment interest;

B. For an award of damages including any difference in compensation Plaintiff and the Class Members would have earned, but for the Defendant's illegal misclassification.

C. For an award of reasonable attorneys' fees and costs incurred in prosecuting this action;

D. For an order enjoining Defendants from continuing its unlawful pay practices;

E. Leave to add additional Plaintiffs by motion, the filing of written consent forms, or any other method approved by the Court;

F. Declaratory judgment that Plaintiff and the Class Members were, at all times relevant to this complaint, employees under the FLSA.

G. Leave to amend to add claims under applicable state laws; and

H. For such further legal and equitable relief as the Court may deem just and proper.

Dated: November 3, 2021

Respectfully submitted,

By: /s/ Joseph A. Whitcomb
WHITCOMB, SELINSKY, PC.
2000 S. Colorado Blvd.
Tower 1, Suite #9500
Denver, CO 80222
303-534-1958 (telephone)
303-534-1949 (facsimile)
joe@whitcomblawpc.com

*Counsel for Plaintiff*